# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| _____ | ) | |
| In the Matter of O.T. | ) | |
| | ) | |
| ZUHTU ONUR TATARI | ) | Docket No. 25-253 |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEVA DURUST | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| _____ | ) | |

## OPPOSITION TO RESPONDENT'S EMERGENCY MOTION FOR A STAY OF ENFORCEMENT OF JUDGMENT PENDING APPEAL

Richard Min
Michael Banuchis
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: 212-681-6400
Facsimile: 212-681-6999
Email: rmin@gkmrlaw.com
Email: mbanuchis@gkmrlaw.com
*Attorneys for Appellee*

1

## **<u>TABLE OF CONTENTS</u>**

**<u>I. PRELIMINARY STATEMENT</u>**………………………………………..5

      **A.**    **A Stay is Not Necessary or Appropriate**…………………………8

**<u>II. COUNTERSTATEMENT OF FACTS</u>**………………………………..9

**<u>III. ARGUMENT</u>**………………………………………………………12

      **A.**    **The Supreme Court's Directive Disfavoring Stays**……………..12

      **B.**    **Application of the Stay Factors**…………………………….....15

            1.  The Mother is Not Likely to Succeed on Appeal..…......……..15

            2.  The Mother Will Not Be Irreparably Injured Absent a Stay..19

            3.  There is Substantial Harm to the Father if a Stay is Granted..21

            4.  Public Interest Weighs Against a Stay………………….....23

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Barcia v. Sitkin*, No. 79 Civ. 5831, 2004 WL 691390 (S.D.N.Y. March 31, 2004) 13

*Chafin v. Chafin*, 568 U.S. 165 (2013) ------------------------------------------ *in passim*

*Furnes v. Reeves*, 362 F.3d 702 (11th Cir. 2004)----------------------------------18

*Eidem v. Eidem*, 2019 WL 13243081 (S.D.N.Y. May 28, 2019) -------------------23

*Garcia v. Posada*, No. 3:24-CV-0360-X, 2024 WL 1615029 (N.D. Tex. Apr. 2, 2024), appeal dismissed, No. 24-10319, 2024 WL 4527116 (5th Cir. June 5, 2024)------------------------------------------------------------------------------------16

*Ho v. Ho*, 2021 WL 4751421 (N.D. Ill. July 31, 2021) -------------------------------23

*Karpenko v. Leendertz*, No. CIV.A 09-03207, 2010 WL 996465 (E.D. Pa. Mar. 15, 2010)----------------------------------------------------------------------------------------20

*Kijowska v. Haines*, 463 F.3d 583 (7th Cir. 2006) ----------------------------------20

*Lozano v. Montoya Alvarez*, 572 U.S. 1, 134 S. Ct. 1224, 188 L. Ed. 2d 200 (2014)-----------

-------------------------------------------------------------------------------------------------18

*Lukic v. Elezovic*, 20-CV-3110, 2021 WL 804384 (E.D.N.Y. Mar. 3, 2021) ------24

*Merrill v. Milligan*, 142 S. Ct. 879 (2022) ------------------------------------------13

*Nicolson v. Pappalardo*, 685 F.Supp.2d 142 (D. Maine 2010)----------------------22

*Radu v. Toader*, 463 F. App'x 29 (2d Cir. 2012) ----------------------------------17

*Redmond v. Redmond*, 724 F.3d 729 (7th Cir. 2013) --------------------------------14

*Royal Borough of Kensington and Chelsea v. Bafna-Louis*, 2023 WL 3976663

   (S.D.N.Y. June 13, 2023) -------------------------------------------------------------------23

*Saavedra v. Montoya*, No. 21-CV-5418(EK)(VMS), 2023 WL 2910654 (E.D.N.Y.

   Apr. 12, 2023) -----------------------------------------------------------------------18

*Seaman v. Peterson*, 766 F.3d 1252 (11th Cir. 2014) --------------------------------14

*Shays v. Federal Election Commission*, 340 F.Supp.2d 39 (D.D.C.2004) ----------13

*Smedley v. Smedley*, 772 F.3d 184 (4th Cir. 2014)------------------------------------14

*Taglieri v. Monasky*, 907 F.3d 404 (6th Cir. 2018), aff'd, 140 S. Ct. 719 (2020) - 14,

   19

*Tatari v. Durust*, 2025 WL 327984 (E.D.N.Y. Jan. 29, 2025) -------------- *in passim*

*Tatari v. Durust*, 2024 WL 4956307 (E.D.N.Y. Dec. 3, 2024)-------------------- 9, 11

*Velozny on behalf of R.V. v. Velozny*, 2021 WL 5567265 (2d Cir. 2021) -----------14

*Whiting v. Krassner*, 391 F.3d 540 (3d Cir. 2004) -----------------------------------14

OTHER AUTHORITIES

Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25,

   1980, T.I.A.S. No. 11,670------------------------------------------------------------ 11

## I.    **PRELIMINARY STATEMENT**

Petitioner Appellee Zuhtu Onur Tatari ("Tatari" or the "Father"), files this Opposition to the Emergency Motion for a Stay of Enforcement of Judgment Pending Appeal filed by Respondent-Appellant Neva Durust ("Durust" or the "Mother"), and states as follows:

The fact pattern in this case is straightforward. The parties, both Turkish citizens, are the divorced parents of the subject child, seven-year-old O.T. When they divorced in 2022, they negotiated and agreed to custodial arrangements for O.T. Their agreed upon terms were reflected in a Turkish divorce decree (the "Divorce Decree"). Pursuant to the plain language of the Divorce Decree, the Mother was obligated to "obtain the approval and opinion" of the Father if "she decides to live abroad together with" O.T. *Tatari v. Durust*, No. 24-CV-6930 (CBA) (LKE), 2025 WL 327984, at \*2 (E.D.N.Y. Jan. 29, 2025). Nevertheless, "[o]n August 20, 2024, [the Mother] flew to America with O.T. …. [and] failed to advise [the Father] of the move, much less seek his approval." *Id*. at \*4.

At the trial level, the Mother sought to prove that, despite the Divorce Decree's unambiguous terms, she was permitted under Turkish law to unilaterally and secretly relocate to the United States with O.T. without notice and without the Father's approval. The district court rejected her arguments and ordered that O.T. be

returned to Turkey. The Mother now reiterates her same arguments to this Court in a transparent attempt to delay O.T.'s repatriation home.

The Mother's argument rests on the untenable ground that the terms of the Divorce Decree, approved by the Turkish court, are unenforceable, and that she was free to disregard her agreement to seek the Father's approval before relocating O.T. The key issue identified by the district court is that the Mother's custodial rights over O.T. did not permit her to violate the Father's custodial rights over O.T., including his *ne exeat* right.

The Mother frames her argument to obfuscate the distinction between having legal custody of a child and what are considered rights of custody pursuant to Articles 3 and 5 in the context of a Hague Convention case. Plainly stated, and as applied by the district court, there is a broad body of case law establishing that a parent who has sole custody of a child can still violate the other parent's rights of custody under the Hague Convention if the non-custodial parent holds a *ne exeat* right over the child.

The parties have been litigating custody in Turkey parallel to this case. A material development occurred in Turkey after the district court issued its January 29, 2025 Memorandum and Order (the "Decision") [D. Ct. Dkt. No. 67]. For context, in January 2024, the Father petitioned the Turkish court for custody of O.T. His case

has been pending in Turkey while he has simultaneously prosecuted this Hague Convention proceeding.

On February 7, 2025, the Turkish court issued an order prohibiting O.T. from being removed from Turkey without the Father's permission (the "Travel Ban"). A certified translation of the Travel Ban is attached hereto as **Exhibit A.** The Turkish Court's Travel Ban should be conclusive to not only the Mother's instant stay motion but also to her arguments on appeal.[1] The question before the district court as to whether the Mother was permitted to relocate O.T. was answered by the Turkish court. This ruling should effectively end this case.

The Mother could have, but did not, seek an order from the Turkish court permitting her to relocate. The Travel Ban's issuance makes clear that she did not do so because she was not legally permitted to unilaterally relocate O.T. She is unlikely to succeed on appeal because her argument distilled down is that she was free to violate the black and white terms of the Divorce Decree giving the Father the right to veto O.T.'s relocation. Such reading is unsupported by the record.

---

[1]    In her stay motion, the Mother argues that the July 2024 Turkish court order, which refused to restrict her travel abroad with O.T., demonstrated that Father did not have custodial rights. *See* Appellant's Br. at 12 ("The July Order is dispositive as it reflects the Turkish Court's finding as to Appellant's sole custody status and ability to relocate abroad just weeks before Appellant's move to America."). This argument can no longer be sustained in light of the Travel Ban.

A. <u>A Stay is Not Necessary or Appropriate</u>

The Supreme Court held in 2013 that Hague Convention appeals are not moot upon a child's return to their habitual residence. Since then, the approach of all Circuits and Districts has been clear and consistent: "stays, even of short duration, should not be granted as a matter of course, for they inevitably entail loss of precious months when [the child] could have been readjusting to life in [his] country of habitual residence." *Chafin v. Chafin*, 568 U.S. 165, 183 (2013) (Ginsburg, J. concurring) (internal citations omitted).

The Supreme Court's stated approach in Hague Convention cases is not to stay returns pending appeals; but rather, it is to return children to their habitual residence on an expedited basis, and in the event the appellant prevails, the lower court retains jurisdiction to order the child's re-return to the United States. *Chafin*, 568 U.S. at 174.

The Mother requests that the approach taken here be the opposite of the one suggested by the Supreme Court. There is nothing about the Mother's appeal that requires it to be treated any differently than any other Hague Convention case. Nothing about the appeal requires the Child to remain in New York while it proceeds. This case is not one of the rare grave risk cases that sometimes gives appellate courts pause, and the Mother never argued that returning the Child to Turkey would pose a grave risk of physical or psychological harm. The district court

8

made significant effort to expedite this Hague Convention case. The instant motion is a transparent attempt to extend further O.T.'s wrongful removal to New York.

## II.  COUNTERSTATEMENT OF FACTS [2]

The parties are the parents of the subject child, O.T. (the "Child"), who was born in June 2018. Prior to the wrongful removal in August 2024, the Child resided in Istanbul, Turkey. The parties married in Turkey in 2016, and divorced in January 2022 by means of a divorce agreement, called a divorce protocol in Turkey. *Tatari v. Durust*, No. 24-CV-6930 (CBA) (SJB), 2024 WL 4956307 at *1 (E.D.N.Y. Dec. 3, 2024). The parties signed the divorce protocol, which was presented to the Turkish court, as required for an uncontested divorce in Turkey pursuant to Article 166/3 of the Turkish Civil Code. *Tatari,* WL 327984 at *1.

The parties were heard before the Turkish Court and their agreed upon divorce protocol, aside from a few modifications to the visitation schedule, was ultimately incorporated into a Divorce Decree. *Id.* The Divorce Decree includes the "attorneys' and parties' statements made at the hearing, as well as the judge's findings." *Id. at *2.*

---

[2]  Much of the Mother's statement of facts section is not supported with citations and many purported facts were not actual district court findings. It is unclear if she is challenging the district court's findings as well as its application of the Hague Convention and Turkish law.

Albeit being awarded sole custody of the Child pursuant to the divorce protocol, Mother acknowledged before the Turkish Court that she "[would] consider and take into account [Tatari's] opinion and approval, as pledged in the protocol" "in matters such as making important decisions regarding the child's health and the relocation of their residence abroad." *Id. at *2.* Party statements, however, fall outside of the "decision" portion of the Divorce Decree. The section with the heading "DECISION," contains within it the provisions of the divorce protocol (with adjustments to the visitation schedule). *Id.*

The parties disputed the translation of the terms of the Divorce Decree. The Father maintained at trial that, pursuant to Section 3.7 of the Divorce Decree, the Mother had to obtain his "approval and opinion" if "she decides to live abroad together with" O.T. The Mother conversely claimed that she merely had to "consult and seek the opinion" of Father "where she decides to live abroad together with" O.T. *Id.*

After hearing the testimony of the Father's expert witnesses concerning the contradictory translations of the Divorce Decree, the district court ultimately found that the Father's translation was more aligned to the original Turkish order. *Id.* at *3.

On August 20, 2024, the Mother unilaterally removed the Child to the United States without notice. *Id.* at *4.

10

In January 2024, the Father petitioned for custody in the Turkish court. *Id.* In July 2024, he unsuccessfully petitioned the Turkish court to prevent Mother from taking the Child outside of Turkey and to notify both the American and Turkish authorities of such injunction. *Id.* The July Order was related to international travel based on Mother unilaterally securing a passport and traveling abroad with the Child without notice, and not relocation. *Id.* at *7. The Turkish Court had not opined on the issue of Mother's ability to relocate abroad until it issued the Travel Ban. *See* **Exhibit A**.

On October 1, 2024, Father filed a petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 (the "Hague Convention") to return the Child to Turkey. *Tatari*, 2024 WL 4956307 at *2.

On December 11 and 12, 2024, a two-day evidentiary hearing was conducted, and a decision granting Father's petition was issued on January 29, 2025. *Tatari*, 2025 WL 327984 at *1.

On January 29, 2025, the district court granted the petition for return to Turkey. [D. Ct. Dkt. No. 67]. Subsequently, the Mother sought a stay of the Decision and Order [D. Ct. Dkt. No. 68]. On February 3, 2025, the Clerk of Court entered judgment in favor of Petitioner [D. Ct. Dkt. No. 69]. On February 6, 2025, the district court granted Mother's motion only in part by entering a brief

administrative stay of the return date of the Child and ordered that, "absent a further stay from the Court of Appeals, O.T. shall be returned to Turkey by February 19, 2025." [D. Ct. Dkt. No. 75].

As stated above, after the district court issued its decision, on February 7, 2025, the Turkish family court issued the Travel Ban prohibiting the Child from traveling abroad "without the consent of his father." *See* **Exhibit A**.

### III. <u>ARGUMENT</u>

### A. **The Supreme Court's Directive Disfavoring Stays**

*Chafin v. Chafin*, 568 U.S. 165 (2013) establishes the law on the issue of appeals and stays in Hague Convention cases. Chief Justice Roberts explained that the Hague Convention and ICARA "stress the importance of the prompt return of children wrongfully removed or retained." *Id. Chafin* recognizes that the goals of the Convention and ICARA can be achieved through "the familiar judicial tools of expediting proceedings and granting stays where appropriate." *Id.* at 178. But the Court emphasizes that such stays are disfavored and should not be granted as a matter of course. *Id.*; *see also id.* at 183 (Ginsburg, J. concurring).

The undesirability of stays is key to the holding that a Hague Convention appeal is not mooted by a child's physical return to his habitual residence. *Id.* at 178. The Court explains that "if [Hague Convention] cases were to become moot upon return, courts would be more likely to grant stays as a matter of course, to prevent

12

the loss of any right to appeal." *Id*. The Court further emphasizes that routine stays "conflict with the Convention's mandate of prompt return to a child's country of habitual residence." *Id*.

Justice Ginsburg expanded on the majority opinion's analysis and instruction on stays in Hague Convention cases. *Id*. at 183 (Ginsburg, J. concurring). "[S]peed and certainty in [Hague] Convention decision making" is required. *Id*. To that end, "stays, even of short duration, should not be granted as a matter of course, for they inevitably entail loss of precious months when [the child] could have been readjusting to life in [his] country of habitual residence." *Id*.

Further, even in cases outside of the Hague Convention, a stay pending appeal is an "extraordinary" remedy. *Merrill v. Milligan*, 142 S. Ct. 879, 883 n.1 (2022). A party seeking a stay bears a heavy burden to "establish[ ] a favorable balance of [the relevant] factors." *Barcia v. Sitkin*, No. 79 Civ. 5831, 2004 WL 691390, at *1 (S.D.N.Y. March 31, 2004); *see Shays v. Federal Election Commission*, 340 F.Supp.2d 39, 41 (D.D.C.2004) (noting that the "standards required to justify the extraordinary remedy of a stay pending appeal" are "stringent").

The Convention is clear that these abduction cases be handled as expeditiously as possible and requires the "prompt" return of the child. *See* Convention, preamble. Article 2 of the Convention directs the signatory countries to "use the most

expeditious procedures available" and Article 11 implies the adjudicative process be completed within six weeks of its initiation.

In recognizing that delay in returning a child is detrimental to the Convention's goals, circuit courts have regularly denied staying return orders. *See, e.g., Friedrich*, 78 F.3d at 1070 (". . . the district court's stay of that order pending appeal is VACATED. . . [b]ecause T.'s return to Germany is already long-overdue. . ."); *March v. Levine,* 249 F.3d 462,475 (6th Cir. 2001) (stay vacated "[b]ecause [S.] and [T.] have been separated from their father for almost one year now". . . ); *see also Velozny on behalf of R.V. v. Velozny*, 2021 WL 5567265, at *1 (2d Cir. 2021); *Smedley v. Smedley*, 772 F.3d 184, 188 (4th Cir. 2014); *Redmond v. Redmond*, 724 F.3d 729, 735 (7th Cir. 2013); *Whiting v. Krassner*, 391 F.3d 540, 543 (3d Cir. 2004); *Taglieri v. Monasky*, 907 F.3d 404, 407 (6th Cir. 2018), aff'd, 140 S. Ct. 719 (2020); *Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014).

The traditional four-factor test applies to stay requests in Hague Convention cases. *Id.* Courts must consider: "(1) whether the stay applicant has made a *strong showing* that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 179 (emphasis added). *Chafin* requires that the traditional test must be

viewed through the lens of expeditious returns, favored re-return orders if an appeal is successful, and that stays are not to be granted as a matter of course.

**B. Application of the Stay Factors**

### 1. The Mother is Not Likely to Succeed on Appeal

To make "a strong showing of a likelihood of success on the merits," the Mother must show "more than a mere possibility that relief will be granted." *Nken*, 129 S. Ct. at 1753. *Chafin* is clear: the Mother must make a "strong showing" that she is likely to succeed on the merits, in order to demonstrate that the first factor weighs in favor of a stay.

The Mother is unlikely to succeed on the merits of her appeal. Her argument at its core conflates the issue of legal custody of O.T. with whether relocating O.T. violated the Father's rights of custody under Turkish law pursuant to the Hague Convention. Regardless of whether or not the Mother has sole custody of O.T., the district court correctly found that "under the Turkish Divorce Decree Tatari has the right to approve, or disapprove, certain decisions about O.T.'s life, including whether he may live abroad." *Tatari v. Durust*, No. 24-CV-6930 (CBA) (LKE), 2025 WL 327984, at *6 (E.D.N.Y. Jan. 29, 2025). The district court noted that this Court has affirmed that this right is "precisely the type of right the Hague Convention recognizes as custodial." *Id.* at *8. While the mother has "sole custody" of O.T., the

15

parties divorce agreement "provides that certain rights—specifically those related to education, healthcare, and country of residence—are exercised jointly by the parties" *Id*. at *6.

The district court, after hearing from Turkish legal experts from both sides, found that the Mother's conduct violated the Father's rights of custody regardless of whether she had sole custody of O.T. This is because even if the respondent parent has sole custody, the petitioning parent can still prevail in a Hague case if "there is some right the left-behind parent has on residence (like the ne exeat veto of foreign travel in *Abbott*) or care (like at issue with a variety of Mexican parental authority rights)." *Garcia v. Posada*, No. 3:24-CV-0360-X, 2024 WL 1615029, at *6 (N.D. Tex. Apr. 2, 2024), appeal dismissed, No. 24-10319, 2024 WL 4527116 (5th Cir. June 5, 2024). Here, not only did the Father have a *ne exeat* right, but he also had rights related to decision making for education and healthcare. *Tatari*, 2025 WL 327984, at *6.

The fact pattern in this case is not novel and neither is the district court's application of law. There have been consistent findings that if the left behind parent holds a *ne exeat* right, then the custodial parent's unilateral relocation of a child constitutes a violation. To that point, this Court has held that "[w]hen a parent's "consent is legally required before the other parent may move the child to another

16

country," that parent has a custodial right to determine the child's residence recognized by law. *Radu v. Toader*, 463 F. App'x 29, 30 (2d Cir. 2012).

Article 3.7 of the Divorce Decree specifically sets forth that the Mother undertakes irrevocably to obtain the Father's approval and opinion if she decides to live abroad with the Child, giving the Father a custodial interest in the Child's place of residence. *Tatari*, 2025 WL 327984, at *3. It is an important distinction that the custodial right is in relation to the residence of the Child and not to travel or vacations abroad with the Child. The Mother argues that an order which permitted her to travel internationally with O.T. was tantamount to a blanket permission to relocate O.T. *See* Appellant's Brief at 11. The district court recognized that the Mother's argument was overreaching in this regard and rejected it. *See Tatari*, 2025 WL 327984, at *7 ("the Turkish court's brief ruling on two days' notice does not evince a clear order permitting Durust to move abroad without Tatari's consent; instead, it reflects a denial of Tatari's request for extraordinary measures to prevent Durust from travelling").

At the heart of the matter, the district court credited the Father's experts' interpretation of Turkish law, including the testimony of Turkish legal expert Mert Yalcin, who testified that the Father has rights of custody pursuant to Article 5 of the Hague Convention specifically with regard to the joint decision provision in the Divorce Decree for education and relocation. *Tatari*, 2025 WL 327984, at *6.

17

So long as the Father had the right to object to relocation, he had custody rights as understood under the Hague Convention and the Child was wrongfully removed from Turkey. *See e.g. Saavedra v. Montoya*, No. 21-CV-5418(EK)(VMS), 2023 WL 2910654, at *14 (E.D.N.Y. Apr. 12, 2023) (petitioner's ne exeat right to consent to whether the child was removed from the country was a "right of custody" under the Hague Convention).

The Eleventh Circuit Court of Appeals cut to the heart of the Mother's argument here, cautioning that:

> [i]n American courts, we tend to think of custody rights primarily in the sense of physical custody of the child. However, in applying the Hague Convention, we must look to the definition of "rights of custody" set forth in the Convention and not allow our somewhat different American concepts of custody to cloud our application of the Convention's terms. Specifically, in this case we must think of "rights of custody" as including "rights relating to the care of the person of the child," and in particular, "the right to determine the child's place of residence."

*Furnes v. Reeves*, 362 F.3d 702, 711 (11th Cir. 2004), abrogated on other grounds by, *Lozano v. Montoya Alvarez*, 572 U.S. 1, 134 S. Ct. 1224, 188 L. Ed. 2d 200 (2014).

Applying these principles, the district court made the commonsense decision to "not depart from the plain language of the Divorce Decree, which provides Tatari the rights explained in Sections 3.4, 3.7, and 3.8." *Tatari,* 2025 WL 327984 at *7. The Mother is therefore unlikely to succeed in her appeal.

18

2.    <u>The Mother Will Not Be Irreparably Injured Absent a Stay</u>

To satisfy the second factor, the Mother must make a "threshold showing" of irreparable harm in the absence of a stay. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). To meet this threshold, she must demonstrate more than merely "some possibility of irreparable injury." *Nken*, 556 U.S. at 420. She has the burden of showing that, absent a stay, she would suffer irreparable injury – i.e., "certain and imminent harm." *U.S. S.E.C. v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014) (citation omitted); *see also Taglieri v. Monasky*, 2016 WL 10950694 at *5 (N.D. Ohio Oct. 28, 2016) (harm to the movant must be both certain and immediate, not merely speculative or theoretical) (citations and quotations omitted).

The Mother reframes the issue by arguing that O.T. would be irreparably harmed without a stay rather than herself. This misconstrues the law and makes the faulty assumption that she and O.T. are united in interests when they are not.

The Turkish court is actively issuing orders in the parties' custody case. There is no dispute that Turkey has custody jurisdiction. This Court should give way to the Turkish court to resolve issues related to O.T. The Convention's "core premise" is that "the interests of children ... in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." *Monasky v. Taglieri*, 589 U. S. 68, 72, 140 S.Ct. 719 (2020) (internal quotation

19

marks omitted). There is no reason for this Court to impede the Turkish court at this point.

The Mother primarily strays into custody related best interest arguments to argue that O.T. would be irreparably injured by returning home to Turkey in the event that she is permitted to eventually relocate back to New York with him. Appealing to the purported facts that O.T. is well adjusted and happy in New York without any citation to the record (Appellant's Brief at 17) is both irrelevant and speculative.

Further, any disruption O.T. may experience is directly caused by Respondent's actions. Parents commonly raise these types of concerns in Hague cases in different contexts. "The fact that a child has grown accustomed to her new home is never a valid concern … as it is the abduction that causes the pangs of subsequent return." *Cuellar v. Joyce*, 596 F.3d 505, 511 (9th Cir. 2010) (internal quotation marks and emphasis omitted). Additionally, the Convention generally is not a "license for a court in the abducted-to country to speculate on where the child would be happiest," *Id*. at 509.

The Travel Ban makes the state of play in this case unique and therefore distinguishable from the cases the Mother cites *Kijowska v. Haines*, 463 F.3d 583, 589-90 (7th Cir. 2006) (no parallel Polish custody case) and *Karpenko v. Leendertz*, No. CIV.A 09-03207, 2010 WL 996465, at *3 (E.D. Pa. Mar. 15, 2010) (stay granted

where court concerned with petitioner disobeying re-return order). Comity is at the heart of the Hague Convention. *Blondin v. Dubois*, 189 F.3d 240, 248 (2d Cir. 1999). The Turkish court is in the best position to enact orders targeted to protect O.T.'s best interest and any delay only serves to undermine the Turkish court's authority.

### 3. There is Substantial Harm to the Father if a Stay is Granted

Courts generally consider the harm to the child under the third stay factor, not under the second. Issuance of a stay will substantially injure the child because it results in "the loss of precious months when []he could have been readjusting to life in h[is] country of habitual residence." *Chafin*, 568 U.S. at 178; *see also Mendoza v. Silva*, 987 F. Supp. 2d 883, 909 (N.D. Iowa Dec. 10, 2013) (applying *Chafin* rationale to find factor weighs against stay); *Rodriguez Palomo v. Howard*, 2019 WL 9633647 at *2 (M.D.N.C Dec. 17, 2019) (same).

O.T. should return home immediately. The second semester at his school in Turkey, Koç School, commenced on February 3rd. [D. Ct. Dkt. No. 75 at 2]. O.T. can resume his studies there immediately without further academic disruption. The Father has already arranged, and remains ready to facilitate, the transition so that any impact on O.T.'s school life would be minimal upon his return.

The Father will of course be substantially injured by a stay. Throughout the underlying litigation the Mother has blocked or otherwise obstructed the Father's access to O.T. This included a refusal to allow the Father to have weekday overnights

with the Child when he was in New York leading up to trial in this matter except for one day, forcing him to have brief after-school visits. [D. Ct. Dkt. No. 74 at 5]. Mother took this position despite the fact that the parties' Divorce Decree allows for overnight weeknight visits which the Father had been exercising in Turkey.

In *Nicolson v. Pappalardo*, 685 F.Supp.2d 142, 145-46 (D. Maine 2010), the court found that the mother "fail[ed] to recognize that if the court grants a stay, [the father] will continue to suffer from the very harm that led to this lawsuit—the absence of [the child] from [the father's] life." The district court in *Nicolson* found that the mother's actions "ha[d] already deprived [the father] of nearly a year with his daughter[,]" such that "[e]very additional day that [the child] is wrongfully retained in the United States causes harm to the [father]." *Id.*

The U.S. Congress, in enacting the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §9001 et seq., found that "international abduction or wrongful retention of child is harmful to their well-being." The Supreme Court wrote in *Abbott v. Abbott*, 560 U.S. 1, 21 (2010) that "[a]n abduction can have devastating consequences for a child. 'Some child psychologists believe that the trauma children suffer from these abductions is one of the worst forms of child abuse.'" The need for an expedited return is paramount, and while the harm that the Father and O.T. have already suffered is impossible to remedy, any further harm can be mitigated by O.T.'s immediate repatriation.

22

4.   Public Interest Weighs Against a Stay

There is a robust body of case law where courts have found that "[t]he public interest, as relevant to a Hague Convention dispute, is primarily defined by the treaty itself, the express purpose of which is to secure the prompt return of children wrongfully removed to or retained in and Contracting State." *See, e.g., Royal Borough of Kensington and Chelsea v. Bafna-Louis*, 2023 WL 3976663 at \*3 (S.D.N.Y. June 13, 2023) (citations omitted). "The Hague Convention itself promotes expeditious resolution of these matters in order to give the children involved finality . . . ." *Ho v. Ho*, 2021 WL 4751421 at \*3 (N.D. Ill. July 31, 2021). The interests in finality and expeditious resolution weigh against delaying a child's return. *Id*.

The public interest is undermined by the issuance of stays in Hague Convention cases because further delays "cut against the Convention's purpose of securing the prompt return of children to their State of habitual residence." *Eidem v. Eidem*, 2019 WL 13243081 at \*3 (S.D.N.Y. May 28, 2019) (citations omitted). The Convention establishes "a public interest in expeditious resolutions of petitions for return of children, for the sake of the children who find themselves in such an unfortunate situation." *Mendoza*, 987 F. Supp. 2d at 909 (internal citations and quotations omitted).

In *Chafin*, 568 U.S. at 165, the Supreme Court cautioned that issuing routine stays would conflict with the Convention's exhortation for prompt disposition and could increase the number of appeals. The Mother fails to cite any authority to the contrary and the public interest weighs against a stay.

Having abducted O.T. from his home, the Mother's suggestion that disruption to his stability and routine should be a Court priority is disingenuous. Relevant is the concept that "[a] removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted." *Lukic v. Elezovic*, 20-CV-3110, 2021 WL 804384, at *3 (E.D.N.Y. Mar. 3, 2021). "Protraction ... is hardly consonant with the Convention's objectives." *Chafin*, 568 U.S. at 185 (Ginsburg, J., concurring). Granting a stay would only serve to further protract this case and would undermine the goals of the Convention.

Respectfully submitted,

/s/ Richard Min
Richard Min
Michael Banuchis
GREEN KAMINER
MIN & ROCKMORE, LLP
420 Lexington Avenue, Suite 2834
New York, NY 10170
(212) 681-6400
*Counsel for Petitioner-Appellee*

24

## CERTIFICATE OF SERVICE

I hereby certify that, on February 18, 2025, a copy of the foregoing paper was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

Dated: February 18, 2025

/s/ Richard Min_____
Richard Min
*Counsel for Petitioner-Appellee*

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORDCOUNT LIMITATIONS

I hereby certify, pursuant to Federal Rules of Appellate Procedure

27(d)(2)(A), 32(a)(5), and 32(a)(6) that the attached Opposition to the Motion for a

Stay is proportionately spaced, has a typeface of 14 points or more, and contains

4827 words.

Dated:     February 18, 2025
            New York, New York

                        _s/ Richard Min_____
                        Richard Min
                        *Counsel for Petitioner-Appellee*

# EXHIBIT A

## APOSTILLE

### ( Convention de La Haye du 5 Octobre 1961 )

1. Ülke/Country/Pays/Staat  TÜRKİYE - LA TURQUIE

   İşbu resmi belge/This public document/Le présent acte public/Dieses zeugnis wurde

2. Şafak KUTAY tarafından imzalanmıştır./Has been signed by/a été signé par/durch ... unterschrieben

3. İmzalayanın sıfatı Başkatibe'dır./Acting in the capacity of/Agissant en qualité de/Titel des Unterzeichneten

4. Üsküdar 5.Noterliği 'nin mühür/damgasını taşımaktadır-bears the seal/stamp of-/est revêtu du sceau/timbre de-trägt Siegel/Stempel von

### TASDİK / CERTIFIED / ATTESTE / BEGLAUBIGUNG:

5. Üsküdar Kaymakamlığı' da/at/à/in

6. 11.02.2025 günü/the/le/Am

7. Şef Fatma BOZTAŞ tarafından/by/par/durch den/die

8. No : 68420 ile tasdik edilmiştir./No:/sous No:/unter Nr.

9. Mühür - Damga/Seal-stamp/Sceau-timbre/Siegel-Stempel

10. İmza/Signature/Signature/Unterschrift:

**REPUBLIC OF TÜRKİYE**

**ISTANBUL 2ND FAMILY COURT**



No. 2024/53 Esas

07.02.2025

**ISTANBUL PROVINCIAL DIRECTORATE OF SECURITY**

**Anti-Migrant Smuggling and Border Gates Department**

We hereby inform you that, due to the Custody Case (Modification of Custody – Art. 183, 349 of the Turkish Civil Code) currently pending before our Court between the Plaintiff, ZÜHTÜ ONUR TATARİ, and the Defendant, NEVA DÜRÜST,

it has been ordered as a precautionary measure that the parties' minor child, Osman Tatari (born on 25/06/2018, Turkish ID No: 22262125710), shall not be permitted to travel abroad without the consent of his father, ZÜHTÜ ONUR TATARİ (Turkish ID No: 38404656882) pursuant to Interim Decision No. 3 issued by our Court in the hearing dated 07/02/2025, and we request that, in accordance with this decision, the necessary procedures be implemented without delay, and that our Court be informed **at the earliest possible time**.

Court Clerk
156849
**(e-signed)**

Judge 37078
**(e-signed)**

**ANNEX:  The Copies of the Passports of the Minor, Osman Tatari (born on 25/06/2018, Turkish ID No: 22262125710).**

\* This document has been electronically signed pursuant to Law No. 5070 and submitted via DYS (Document Management System); therefore, no physical copies shall be dispatched.\*

**T.C.**
**İSTANBUL**
**2. AİLE MAHKEMESİ**

Sayı    : 2024/53 Esas                                                    07.02.2025

**İSTANBUL İL EMNİYET MÜDÜRLÜĞÜ**
**Göçmen Kaçakçılığıyla Mücadele ve Hudut Kapıları Şube Müdürlüğü'ne** - **650** **3**

    Davacı , ZÜHTÜ ONUR TATARİ ile  Davalı , NEVA DÜRÜST arasında mahkememizde görülmekte olan Velayet (Velayetin Değiştirilmesi (TMK M.183,349)) davası nedeniyle;

    Mahkememizin 07/02/2025 tarihli duruşmasının 3 no'lu ara kararı gereği tarafların müşterek çocuğu 25/06/2018 doğumlu Osman Tatari (T.C.No: 22262125710) 'nin babası 38404656882 T.C.Kimlik numaralı ZÜHTÜ ONUR TATARİ'nin muvafakati alınmaksızın yurt dışına çıkışlarının tedbiren önlenmesine karar verilmiş olup, karar gereği işlem yapılarak mahkememize **EN KISA SÜREDE** bilgi verilmesi rica olunur.

Katip 156849                                                              Hakim 37078
**( e-imzalıdır )**                                                        **( e-imzalıdır )**

**EKİ. Küçük 25/06/2018 doğumlu Osman Tatari (T.C.No: 22262125710) 'nin PASAPORT ÖRNEKLERİ**

* Bu evrak 5070 sayılı yasaya göre  e-imzayla imzalanarak DYS üzerinden gönderilmiş olup; ayrıca fiziki evrak gönderilmeyecektir. *

**11 ŞUBAT 2025**

NAZAY TERCÜME
DIŞ HİZMETLERİ LTD. ŞTİ.
Reis Mah. Acemoğlu
No: 13/A Üsküdar/İST
Tel: 0216 553 01 81

