# 25-0253-cv

## United States Court of Appeals

*for the*

## Second Circuit

ZUHTU ONUR TATARI,

*Petitioner-Appellee,*

— v. —

NEVA DURUST,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR RESPONDENT-APPELLANT
## AND SPECIAL APPENDIX

BRETT S. WARD
ANDREW T. HAMBELTON
PAUL H. TZUR
    (*Admission Pending*)
BLANK ROME LLP
*Attorneys for Respondent-Appellant*
1271 Avenue of the Americas
New York, New York 10020
(212) 885-5000

CP COUNSEL PRESS    (800) 4-APPEAL • (379280)

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................... ii

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ......................................................................................3

    I.    THIS COURT SHOULD REVERSE THE DISTRICT
        COURT ORDER BECAUSE APPELLEE HAS NO
        CUSTODIAL RIGHTS ................................................................3

        A.    Turkish Law Only Provides for Sole or Joint Custody
             in a Divorce .................................................................3

        B.    Appellee Does Not Have Joint Custody of the Child ................5

        C.    Appellee does not have a *Ne Exeat* right under the
             Terms of the Divorce Decree ......................................7

        D.    The Turkish Court's Prior Orders Definitively
             Establish that Appellee Has No Custodial Rights ...................11

             1.    The January 2024 Turkish Court Order Confirms
                 that Appellee Lacks Custodial Rights ...........................11

             2.    The July 2024 Turkish Court Order Reaffirms
                 that Appellant has Sole Custody and Can
                 Relocate with the Child ................................................12

             3.    The November 2024 Turkish Court Order
                 Further Confirms Appellee Lacks Custodial
                 Rights ..........................................................................15

             4.    The February 2025 Turkish Court Supports
                 Appellant's Position ....................................................16

        E.    The Prior Turkish Court Rulings Are Dispositive ...................18

        F.    Appellee Has No *Ne Exeat* Right Under Turkish Law .............21

    II.    IN THE ALTERNATIVE, THIS COURT SHOULD
        REMAND TO DISTRICT COURT WITH AN ORDER
        DIRECTING THE APPLICATION OF ARTICLE 15 .....................25

CONCLUSION ...................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abbott v. Abbott*,
   560 U.S. 1 (2010) ...................................................................... 20, 23

*Altamiranda Vale v. Avila*,
   538 F.3d 581 (7th Cir. 2008) ...................................................24

*Amara v. Cigna Corp.*,
   53 F.4th 241 (2d Cir. 2022) .....................................................16

*De Vasconcelos v. De Paula Batista*,
   No. 4:10-CV-00628, 2011 WL 806096 (E.D. Tex. Mar. 1, 2011) ......................10

*DeBernardo v. Lowe's Home Centers*,
   No. 22-453, 2023 WL 2291882 (2d Cir. Mar. 1, 2023) ........................16

*Furnes v. Reeves*,
   362 F.3d 702 (11th Cir. 2004) ..................................................23

*Garcia v. Posada*,
   728 F. Supp. 3d 430 (N.D. Tex. 2024), *appeal dismissed*,
   No. 24-10319, 2024 WL 4527116 (5th Cir. June 5, 2024) .................24

*Gatica v. Martinez*,
   No. 10-21750-CIV, 2010 WL 6744790 (S.D. Fla. Oct. 13, 2010) ..................6, 7

*Hanley v. Roy*,
   485 F.3d 641 (11th Cir. 2007) ..................................................24

*Holder v. Holder*,
   305 F.3d 854 (9th Cir. 2002) ................................................ 19, 20

*In re Application of Adan*,
   437 F.3d 381 (3d Cir. 2006) ....................................................28

*Leonard v. Lentz*,
   288 F. Supp. 3d 945 (N.D. Iowa 2018) ............................. 3, 21, 22, 23

*Lieberman v. Tabachnik*,
   625 F. Supp. 2d 1109 (D. Colo. 2008) ...........................................6, 7

*Monasky v. Taglieri*,
   589 U.S. 68 (2020) ................................................................2

*Palencia v. Perez*,
  921 F.3d 1333 (11th Cir. 2019) ...........................................................23

*Pawananun v. Pettit*,
  No. 1:20CV1081, 2020 WL 4462255
  (N.D. Ohio Aug. 4, 2020) ........................................................... 19, 20

*Pignoloni v. Gallagher*,
  555 F. App'x 112 (2d Cir. 2014) ........................................................17

*Shah v. United States Dep't of Lab.*,
  No. 23-6296, 2025 WL 45397 (2d Cir. Jan. 8, 2025) .........................17

*Shealy v. Shealy*,
  295 F.3d 1117 (10th Cir. 2002) .........................................................20

*Slight v. Noonkester*,
  No. CV 13-158-BLG-SPW, 2014 WL 282642 (D. Mont. Jan. 24, 2014) ..........17

*Whallon v. Lynn*,
  230 F.3d 450 (1st Cir. 2000) ..............................................................17

*White v. White*,
  718 F.3d 300 (4th Cir. 2013) ....................................................... 10, 17

## Statutes & Other Authorities:

Hague Convention Art. 1 ........................................................................28

Hague Convention Art. 3 ................................................................17, 21

## PRELIMINARY STATEMENT

On August 20, 2024, when Appellant left Turkey with her son to relocate to the United States, she had sole custody of the Child under Turkish law. The Turkish Judge overseeing the parties' underlying divorce required Appellee, at the time of the final divorce judgment, to acknowledge this fact on the record, including the Appellant's right to relocate abroad with the Child without his consent. (App. 583). In January 2024, Appellee again acknowledged Appellant's sole custody rights, this time in his subsequent filing to the Turkish Court attempting to change custody Appellant's sole custody over the Child.[1] (App. 744).

The Turkish Courts likewise have repeatedly and unambiguously told Appellee that the Appellant has sole custody over the Child, and consequently that Appellant can relocate with the Child abroad without Appellee's consent. (App 725, 720). This holding by the Turkish Court in July 2024 is fully consistent with the well-establish principle of Turkish law that a parent with sole custody has the right to relocate without the other parent's consent. (App. 465-66, 225, 286, 494,

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Brief for Respondent-Appellant dated February 21, 2025 ("Br."). The Brief for Petitioner-Appellee dated March 7, 2025, is referred to as the "Opposition" ("Opp.").

619, 830-32). Furthermore, under Turkish law there are no *ne exeat* rights once there is a divorce and a parent has sole custody.

Despite all this, the District Court still erroneously found that the Divorce Decree somehow provided Appellee with *ne exeat* rights. In his Opposition, while not acknowledging the reasoning set forth by the District Court, Appellee instead repeatedly argued that he had custodial rights under the Hague Convention, as if the treaty contained independent doctrines of custodial law, which it does not.

What the District Court ruled below and what Appellee is asking this Court to do is to disregard the "core premise" of the Hague Convention—"that the interests of children . . . in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020). Appellee's attempt to have the United States Courts ignore dispositive rulings of the Turkish Courts in Appellant's favor— including the July 2024 Turkish Court Order specifically denying Appellee's application to bar Appellant from relocating with the Child and concluding that Appellant has the right to relocate abroad because she has sole custody of the Child—is improper forum shopping at its core, contrary to the principles of the Hague Convention.

Appellant's position in this case is fully consistent with the policy objectives of the Hague Convention. "[T]he purpose of the Convention may be served where

- 2 -

a child's home country is permitted to decide the issue of custody" even while "allowing the children to remain in the United States, as long as custody proceedings remain with the Turkish Court." *See Leonard v. Lentz*, 288 F. Supp.3d 945, 953 (N.D. Iowa 2018). Here, there is a custody litigation in Turkey, which the Appellee himself started. That proceeding has not been and will not be impaired by the Child living in the United States. Therefore, the central purpose of the Hague Convention is not served by a return order in this case.

## ARGUMENT

### I. THIS COURT SHOULD REVERSE THE DISTRICT COURT ORDER BECAUSE APPELLEE HAS NO CUSTODIAL RIGHTS

The central premise of the District Court's Order and Appellee's argument is that § 3.7 of the Divorce Protocol—which the Appellee says was incorporated into the Divorce Decree— created a *ne exeat* custodial right under Turkish law that was violated by Appellant's relocation with the Child to the United States. (SPA 36, Opp. 3, 13, 16, 35). This conclusion by the District Court is reversible error and is wrong for several reasons.

#### A. Turkish Law Only Provides for Sole or Joint Custody in a Divorce

Contrary to Appellee's assertion, the District Court "invent[ed] a novel custody right," (Opp. 17), by finding that Appellee has a *ne exeat* right even though

- 3 -

the Divorce Decree awards sole custody to Appellant. There is no support for this finding in Turkish law. (Opp. 17).

The Turkish Civil Code only provides for sole custody in a divorce. (App. 219, 263, 264, 456, 676, 828; Opp. 10). As a matter of public policy to avoid situations where children are in the middle of disputes between parents, Turkey intentionally only recognizes sole custody. (App. 456). It is undisputed that, under Turkish law, the sole custodial parent has the absolute right to make all decisions regarding the Child's life including, whether to relocate abroad without the other parent's consent. (App. 225, 264, 286, 465-66, 619, 830-32). Furthermore, after the parties are divorced and a party has sole custody, Turkish law does not recognize *ne exeat* rights for the other parent. (*Id.*).

As the District Court acknowledged, "Turkish law [] does not formally recognize joint custody." (SPA 18). International law–in a limited way—forced the Turkish Courts to recognize formal joint custody arrangements. Only recently— after 2016—did Turkey even begin to recognize joint custody in divorce matters, following Turkey's adoption of the European convention on Human Rights. (Opp. 10). Nevertheless, Turkish Courts are "reluctant" to approve joint custody; it is only granted in "exceptional cases" where the language in a Turkish divorce decree is explicit and uses the phrase "joint custody." (App. 457, 286, 624, 669, 209, 491, 459-60). This limited exception is consistent with Turkey's policy of providing only

for sole custody to avoid children being exposed conflict between the parents.

These are the only two options under Turkish law after a divorce—sole custody or explicitly-stated joint custody. There is no portion of the Turkish civil code or other authority cited by Appellee that provides that, after a divorce, there are custodial rights a party can have other than sole custody or joint custody.

## B. Appellee Does Not Have Joint Custody of the Child

The District Court noted that Appellee "has not argued that he has formal joint custody." (SPA 32). At trial, however, Appellee's experts very clearly took the position he had joint custody. (*See* App. 292 (Mr. Yalcin testified that Appellant has "joint custody with Mr. Tatari"), App. 628 (Mr. Yalcin's expert report stated: "In this case . . . the custody and responsibility of the child are shared jointly"), 209-10 (Mr. Huysal testified the parties agreed to resolve their divorce "[b]y joint custody"), App. 668 (Mr. Husyal's expert report stated: "[t]his case at hand is a clear example of joint custody practice")).

The District Court thus essentially rejected Appellee's position that he was provided with joint custody in the Divorce Decree. That is because a conclusion that Appellee has joint custody is not possible based on the Divorce Decree's plain language. In the second section of the Divorce Decree, the Turkish Court expressly orders that Appellant be appointed the sole custodian of the Child. (App. 584, Opp. 8). Appellee does not contest that his own expert testified that the language in the

Divorce Decree—"the mother shall be appointed as the custodian of the child"—provides for sole custody. (App. 299). Nor does Appellee deny that Appellant's expert concluded that the Divorce Decree unambiguously grants sole custody to Appellant. (App. 457).[2]

In light of the District Court's Order, Appellee is no longer asserting he has "joint custody." Instead, he is now claiming that he has some amorphous "joint custodial" rights, short of actual joint custody. (*See, e.g.,* Opp. 1 (claiming Divorce Decree contains carve outs for "joint custodial rights"); Opp. 12 (asserting Appellee has "joint custody . . . over several areas")). Appellee is engaging in legal gymnastics and baseless semantics (claiming he can exercise "certain rights . . . jointly" but not saying "joint custody") (Opp. 31) to support the District Court's Order finding that he has such intermediate custodial rights. The fatal flaw to this argument is that there is no Turkish legal authority establishing that one parent can be granted sole custody while the non-custodial parent retains certain joint custodial rights but not others.

Appellee cites to *Lieberman v. Tabachnik*, 625 F. Supp. 2d 1109, 1118 (D. Colo. 2008), and *Gatica v. Martinez*, No. 10-21750-CIV, 2010 WL 6744790 (S.D. Fla. Oct. 13, 2010) to support his claim that the Divorce Decree provides him with certain joint custodial rights. But in those cases, there is an explicit grant of joint

---

[2] In his Opposition, Appellee simply ignores all of the opinions offered by Dr. Inal.

parental rights, not present in the Divorce Decree. *See Lieberman*, 625 F. Supp. 2d at 1117 (the divorce decree states: "Both parties shall have the paternal authority of their minor children"); *Gatica*, 2010 WL 6744790 at *2 (the divorce decree states: "Both parties agree to retain parental authority [*patria potestad*] over [the children]"). Here, the Divorce Decree clearly states: "ORDERED, ADJUDGED AND DECREED . . . THAT Neva Dürüst Tatari, the mother, be appointed as the custody of [O.T.] the biological child of the Parties." (App. 584)

Therefore, Appellee's claim that Appellant's "sole custody" of the Child is "in name only" is not only contradicted by Divorce Decree itself, which has no language stating that Appellee has joint custodial rights, but also has no support under Turkish law. (Opp. 22).

### C. Appellee does not have a *Ne Exeat* right under the Terms of the Divorce Decree

The District Court held that "Turkish law allows a non-custodial parent, like [Appellee], to retain certain custody rights" (Opp. 12), "specifically a <u>ne exeat</u> right," (SPA 37), even when the other parent has sole custody. This is the fundamental flaw in the District Court's ruling.

Appellee and the District Court rely on the Divorce Protocol, specifically Sections 3.4, 3.7 and 3.8 to support the District Court's conclusion that Appellee has some custodial rights under Turkish law, even though the Divorce Decree does not provide for joint custody. Nothing better illustrates the erroneousness of Appellee's

argument (and the District Court's finding) than what occurred on the date the parties appeared in their divorce action before the Turkish Court to get divorced. On that date, and after the parties presented the Divorce Protocol to the Court and the Turkish Court accepted it, including sections 3.4, 3.7 and 3.8, the Judge presiding over the divorce had Appellee acknowledge: "*I understand that the [Appellant] may legally make decisions at h[er] sole discretion in line with h[er] custodian rights, including material decisions about the child's healthcare and moving his residence to abroad.*"[3] (App. 583 (emphasis added)). Appellee acknowledges that this statement reflects "a summary of the oral testimony at the uncontested divorce hearing." (Opp. 7). Appellee admitted in open court that the Divorce Protocol does not provide him with joint custodial rights and that Appellant had the absolute right to relocate with the Child.

Appellee, like the District Court, claims that this admission is not legally binding and cannot "serve[] to limit or revoke" the terms in the Divorce Protocol. (Opp. 32-33, SPA 30). But regardless of whether Appellee's admission has a binding effect, his admission in the Divorce Decree is fully consistent with the award of sole custody to Appellant. Appellee "fails to present any logical reason

---

[3] Appellee's preferred translation, cited by the District Court, has even stronger language, stating that Appellee: understood that "in matters such as making important decisions regarding the child's health and the relocation of their residence abroad, [Appellant could] legally make decisions alone under the scope of custody." (SPA-21).

why" the divorce judge would have required Appellee to make such an acknowledgment on the record at the time of the final divorce judgment if it were not true. (Opp. 39). There is no plausible explanation other than that Appellee's admission, as memorialized by the Divorce Decree, is an accurate recitation of Appellant's custodial rights. Appellee cannot simply ignore his own statements at the Divorce Hearing because they do not support his present position.

Moreover, consistent with Appellee's admission in the Divorce Decree, the Divorce Protocol is not part of the Turkish Court's order in the Divorce Decree. Appellee acknowledges that the "Divorce Protocol is an independent document" but then claims that the Divorce Protocol "was approved by the Turkish judge and ordered in the Divorce Decree." (Opp. 38). Appellee bases this claim on the translation of Section 4.2 of Petitioner's Exhibit 29. (Opp. 39). However, Appellee does not even attempt to address the significant translation discrepancies pertaining to Section 4.2. (Br. 34-35). Of the three different translations of the Divorce Decree submitted by Appellee, two of them do not state that the Divorce Protocol was "considered part of the decision" of the Turkish Court. (App. 587, 854-55). Additionally, Appellee completely disregards that Petitioner's Exhibit 29 was never affirmed to be accurate by any witness at trial or by any expert in this case. Appellee also does not dispute that his counsel expressly instructed his translation expert not to review or opine on any portion of the Divorce Protocol outside of Section 3.7 and

3.8. (App. 355-60). While authentication requirements are relaxed in Hague Convention cases, "it does not absolve [Appellee] from providing the Court with accurate English translations." *De Vasconcelos v. De Paula Batista*, No. 4:10-CV-00628, 2011 WL 806096, at *2 n.1 (E.D. Tex. Mar. 1, 2011). There is simply no evidence presented by Appellee that the English translation of Section 4.2 in Petitioner's Exhibit 29, relied on by both the District Court and Appellee, is accurate.

The only authenticated English translation of Section 4.2 is in Petitioner's Exhibit 22, which was fully authenticated by Mr. Yacizi in his expert opinion. (App. 645). That translation merely states that the Divorce Protocol was approved and annexed to the Divorce Decree. (App. 587). Appellee provides no Turkish legal authority, besides the say so of his own retained experts (which is notably contradicted by Appellant's experts (App. 463, 494)) to prove that the Turkish Court's "approval" of the Divorce Protocol transforms it into an enforceable Court order. (Br. 35-36).

Under these circumstances, Appellee cannot meet his burden of proving that the Divorce Protocol provides him with certain joint custodial rights, *White*, 718 F.3d at 305, a position which is directly contradicted by his own acknowledgment in the Divorce Decree, stating that Appellant has sole custodial rights and the ability to make decisions on her own, regardless of Appellee's approval.

**D.    The Turkish Court's Prior Orders Definitively Establish that Appellee Has No Custodial Rights**

Consistent with Appellee's admission in the Divorce Decree, every time the Turkish Court ruled on Appellee's custodial rights, it repeatedly held that Appellant has sole custody of the Child, contradicting Appellee's claim and the District Court's finding that the Divorce Protocol gives Appellee custodial rights.  (App. 720).

**1.    The January 2024 Turkish Court Order Confirms that Appellee Lacks Custodial Rights**

It is undisputed that, in January 2024, Appellee moved in the Turkish Court for a change of custody. It is also not contested that Appellee's change of custody application explicitly states that Appellant has sole custody of the Child. (App. 744, 408).  Nor does Appellee contest that his own expert testified that filing for a change of custody is the sole remedy in Turkey for a parent *without* custodial rights to challenge a decision made by the custodial parent. (App. 285, 466, 619-20). Appellee's only response to his expert's testimony is that it "is not applicable to the parties or their circumstances in this case." (Opp. 24).   Appellee's position is contradicted by the District Court's recognition that the Divorce Decree "grants [Appellee] a right to petition the Turkish court for a change of custody if [Appellant] moves abroad with [the Child]." (SPA 34).  Thus, the fact that Appellee brought a change of custody case is a definitive admission of his lack of custodial rights in the Divorce Decree.

In Appellee's change of custody application, Appellee also sought to have the Turkish Court change custody of the Child to him on an interim basis and to stop Appellant from traveling with the Child, which the Court denied. (App. 765; 733). Appellee claims that this interim decision "has no nexus with whether he holds a right of custody under the Hague Convention." (Opp. 24). That is clearly not the case, as the Court's denial of the interim relief requested by Appellee preserved the pre-existing status quo, leaving sole custody with Appellant and affirming Appellant's right to travel abroad with the Child. On February 29, 2024, the Turkish Court again confirmed that Appellee lacked custodial rights, concluding that, in the Divorce Decree, "it was decided to grant the custody of [the Child] to his mother." (App. 725, 489).

**2. The July 2024 Turkish Court Order Reaffirms that Appellant has Sole Custody and Can Relocate with the Child**

In his Opposition, Appellee asserts that his July 2024 application "was meant to address his desire to know the Child's whereabouts" (Opp. 25) and that "the Turkish court's July 2024 order was narrowly limited to recognizing [Appellant's] right to travel abroad and cannot reasonably be interpreted as approving a permanent move." (Opp. 16). These claims are in direct conflict with

- 12 -

the evidence at trial and are made by Appellee solely so he can escape the dispositive effect of the July Oder. (Br. 22-24).

Appellee's July application specifically focused on his expressly stated concern that Appellant was "practically abducting the joint child abroad," which would cause the Child to be "taken away from him" and become "completely estranged from his father." (App. 737). Appellee's application never uses the word "travel" anywhere. It is also illogical that Appellee's application pertained only to "travel," as his Opposition claims (Opp. 25), because short-term travel would not create the risk that the Child would become "completely estranged from his father," which is Appellee's explicit concern, as stated in the Application. (App. 737). Moreover, Appellee's July application followed Appellee's email expressing concern that the Child "may have been abducted" by Appellant. (App. 798). Indeed, at trial, Appellee admitted his application was prompted by his concern that Appellant "was going to *kidnap* the child" and "*move the child abroad*." (App. 432 (emphasis added)).

The Turkish Court expressly considered Appellee's concerns that Appellant was going "abduct" the Child. (App. 720). Nevertheless, in the July Order, the Turkish Court denied Appellee's application. (*Id*.). In the July Order, the Turkish Court reaffirmed that, based on the terms of the Divorce Decree, "the mother has custody." (App. 720). Thus, the Turkish Court reasoned that Appellant may "use

- 13 -

her rights arising from custody" to "go abroad" with the Child. (App. 720). Appellee's expert, Mr. Yalcin, confirmed that the Turkish Court rejected Appellee's request, "not[ing] that the mother has custody" (App. 287-88), and Appellee admitted that, in the July Order, "the Turkish court recogniz[ed] that [Appellant] has custody and not [Appellee]." (App. 434-35). The July Order is therefore fully consistent what all the Turkish legal experts at trial testified—that a parent that has sole custody following a divorce can relocate with a Child without the consent of the non-custodial parent. (App. 465-66, 225, 286, 494, 619, 830-32).

Appellee asserts that his expert, Mr. Yalcin, testified that the July Order is not related to Appellant's right to relocate abroad. (Opp. 25). That claim is contradicted by Mr. Yalcin's subsequent testimony that the risk of "abduction" is distinct from "temporary travel" and that the term "abduction" is actually analogous to "relocation." (App. 287). Mr. Yalcin's testimony clearly confirmed that Appellee's application was motivated by his "fear for relocation," which is why he sought to prevent Appellant from going abroad. (App. 287-288).

Thus, in denying Appellee's request to prevent the "abduction" of the Child, the Turkish Court clearly ruled that Appellant could relocate abroad with the Child because of her sole custodial rights. (App. 493).[4] Appellee's assertion that "the

---

[4] Appellee also claims that the July Order is not controlling because it "was filed in a proceeding concerning passports and not a custody matter." (Opp. 27). The

Turkish court never issued any orders permitting [Appellant] to relocate" is

therefore false. (Opp. 22). Likewise, the District Court's determination that the

July 2024 Order "does not evince a clear order permitting [Appellant] to move

abroad without ["Appellee's] consent" is reversible error. (SPA-32).

### 3. The November 2024 Turkish Court Order Further Confirms Appellee Lacks Custodial Rights

Following Appellant's move with the Child to New York,[5] Appellee asked

the Turkish Court to expedite resolution of his change-of-custody petition and

award him temporary custody of the Child because Appellant abducted the Child

to the United States. (App. 443, 790-91). In his emergency application, Appellee

never claimed that he had custodial rights that were violated by Appellant. (App.

790-91, 795).

On November 4, 2024, the Turkish Court rejected Appellee's renewed

request for a temporary change of custody and denied his request to expedite the

Custody Case. (App. 803). Appellee incorrectly asserts that the November 2024 is

"not determinative as to his rights of custody." (Opp. 26), but the November 2024

decision of the Turkish Court clearly preserves the status quo—which, based on

---

proceeding in which the July Order was issued is irrelevant. What matters is the
order and reasoning of the Turkish Court.

[5] Appellee's assertion that Appellant "could have, but did not, seek an order from
the Turkish court permitting her to relocate" (Opp. 27) misses the point of the July
Order. Appellant did not need to seek permission because she had sole custody.
(App. 720).

the July 2024 Order, is that Appellant has sole custody.  It is also significant that the Turkish Court issued no order to return the Child to Turkey.  If the Child was indeed abducted in violation of Appellee's custodial rights, the Turkish Court would have acted accordingly.

### 4. The February 2025 Turkish Court Supports Appellant's Position

Hypocritically, Appellee asserts that a February 2025 Turkish Court ruling (but not any of the prior Turkish Court rulings) is somehow indicative of Appellee's custodial rights and authority to restrict Appellant's ability to relocate abroad with the Child.  (Opp. 27). This is absolutely not the case.  What the Turkish Court did to change the status quo in Turkey after learning of the District Court's ruling is not indicative of anything related to the status of Appellee's custodial rights six months prior.  Moreover, it was wholly improper for Appellee to even reference the February 2025 Turkish court ruling, which is the subject of Appellee's pending Motion to Supplement the Record (Dkt. No. 37), opposed by Appellant (Dkt. No. 44), and therefore not in the record on appeal.[6]

---

[6] Appellee cannot establish the "extraordinary circumstances" required to supplement the record on appeal. *Amara v. Cigna Corp.*, 53 F.4th 241, 257 n.8 (2d Cir. 2022). The February 2025 Turkish Court order was issued nearly *two months after* the trial in this action and a more than a week after the District Court's Order. It could not have been considered by the District Court in its Order and it is inappropriate for this Court to consider it on appeal. *See DeBernardo v. Lowe's Home Centers*, No. 22-453, 2023 WL 2291882, at *3 (2d Cir. Mar. 1, 2023) ("A motion to supplement 'is not a device for presenting evidence to this Court that

Nevertheless, that decision supports Appellant's claim that Appellee had no *ne exeat* right at the time of the alleged wrongful removal. By issuing a new order to prevent Appellant from leaving Turkey with the Child without Appellee's consent after the District Court's ruling, the February 2025 decision illustrates that, prior to February 2025, such a restriction was *not* in place, despite Appellee's claim that he had a *ne exeat* right at the time of removal. In other words, if there was already a requirement for Appellant to obtain Appellee's consent to relocate with the Child,

---

was not before the trial judge.'"); Additionally, the decision is irrelevant to the question at issue in this appeal—whether Appellee had custodial rights at the time of the alleged wrongful removal which occurred six months prior. *See White v. White*, 718 F.3d 300, 307 (4th Cir. 2013) ("[R]ights of custody for purposes of Article 3 of the Convention mean[] rights of custody *at the time of removal*.") (emphasis added); *Whallon v. Lynn*, 230 F.3d 450, 459 (1st Cir. 2000) (custody proceedings commenced after removal "are inapplicable to this action because the Convention refers specifically to [the petitioner's] rights of custody at "the time of removal."); *Slight v. Noonkester*, No. CV 13-158-BLG-SPW, 2014 WL 282642, at *6–7 (D. Mont. Jan. 24, 2014) ("chasing orders"—subsequent orders pertaining to custody after a parent has left the country—"do not create wrongful retention under Art. 3 of the Convention."). Thus, the February 2025 Turkish Court order "would make no difference in the resolution of [Appellee's] appeal." *Shah v. United States Dep't of Lab.*, No. 23-6296, 2025 WL 45397, at *1 n.1 (2d Cir. Jan. 8, 2025) (denying motion to supplement); *Pignoloni v. Gallagher*, 555 F. App'x 112 (2d Cir. 2014) (denying motion to supplement record with subsequent ruling of Italian court "which altered the parents' custody rights prospectively" because it "does not affect the analysis of their agreement in 2011"—the order in place at the time of removal). Furthermore, it is wholly irrelevant that the Turkish Court took a "precautionary measure" only after the District Court Order was issued. (Opp. 26). It is not surprising that the Turkish Court would restrict the Child's ability to go abroad when a United States Court just ordered the child was wrongfully removed, especially given the pending change of custody proceeding in Turkey. Appellee's reference to the February 2025 Turkish Court order is nothing more than an improper attempt to influence this Court.

- 17 -

as Appellee claims, the February 2025 order would have been unnecessary. The only reason for the Turkish Court to now prevent Appellant from leaving Turkey with the Child is because Appellant previously had the ability to do so.

### E. The Prior Turkish Court Rulings Are Dispositive

Contrary to Appellee's assertion, Appellant does not "overstate[] the significance" of the prior Turkish Court orders (Opp. 16) and these rulings are not "irrelevant to this case." (Opp. 22-23). The central issue in this appeal is whether Appellee had custodial rights that were violated. In multiple instances, the Turkish Court held that Appellant has sole custody. As Appellee's own expert Mr. Yalcin acknowledged, the Turkish Court did not find that the parties had a "joint custody regime," contrary to Appellee's position in this case. (App. 287). The Turkish Court also rejected all attempts by Appellee to limit Appellant's custodial rights and transfer custody to Appellee prior to the District Court Order—confirming that, at the time of removal, Appellee did not have custodial rights. Appellant's sole custody of the Child at the time of removal is determinative because it is undisputed by all the Turkish legal experts at trial that a party with sole custody in Turkey has the absolute right to relocate with their child. (App. 225, 264, 286, 465-66, 619, 830-32).

The July Order also completely undercuts the reasoning of the District Court and Appellee on the interpretation of the Divorce Decree. When making the July

- 18 -

Order, the Turkish Court clearly reviewed the Divorce Decree and still found that Appellant had sole custody and the right to relocate abroad with the Child. (App. 720). The Turkish Court did not find any quasi-joint custody or *ne exeat* right when making its determination. Therefore, the District Court's finding and Appellee's argument to the contrary cannot be upheld.

Appellee asserts that the issues decided in the July Order are "fundamentally different" than the issues before this Court. (Opp. 23). But, in the July Order, the Turkish Court reviewed the Divorce Decree, concluded Appellant has sole custody, and on that basis, denied Appellee's request to stop Appellant from relocating with the Child. (App. 720). Appellee himself explains that a *ne exeat* order is "[a]n equitable writ restraining a person from leaving, or removing a child or property from, the jurisdiction." (Opp. 3 n.1). Therefore, the July Order rejected Appellee's attempt to obtain a *ne exeat* order—a restraint on Appellant's ability to remove the Child from Turkey. Consequently, any assertion that Appellee has a *ne exeat* right is directly contrary to the July Order.

Appellee cites to *Holder v. Holder,* 305 F.3d 854 (9th Cir. 2002) and *Pawananun v. Pettit*, No. 1:20CV1081, 2020 WL 4462255 (N.D. Ohio Aug. 4, 2020) to support his claim that United States Courts do not need to defer to the dispositive rulings of the Turkish Court regarding Appellee's custodial rights and Appellant's ability to relocate with the Child. (Opp. 23). But those cases stand

only for the principle that foreign court adjudications are not entitled to comity

when they decide issues that are different from those in the United States action.

*See Holder*, 305 F.3d at 868 (noting that the Hague Convention claims "will not be

resolved by the state court proceeding" because "the issues relevant to the

adjudication of a Hague Convention petition are distinct from those relevant to a

custody determination under state law"); *Pawananun*, 2020 WL 4462255, at *3

(noting the Thai Court did not decide the same issue because its "focus was on

custody; a different consideration than 'grave risk of harm' under 13(b) of the

Convention").

But here, as in *Shealy v. Shealy*, 295 F.3d 1117, 1124 (10th Cir. 2002), there

was an order in place at the time of the alleged wrongful removal that permits

relocation—the opposite of a *ne exeat* order.  Appellee's only basis to distinguish

*Shealy* is his unsupportable claim that the July Order does not permit Appellant to

relocate with the Child, which is contradicted by the plain language of Appellee's

July application and the July Order.  (App. 737-38, 720).  As a result, the District

Court's conclusion that Appellee has a *ne exeat* right is directly contrary to the

"decisions regarding custody rights" already made by the Turkish Court, which,

according to the Hague Convention, must be respected by United States Courts.

*Abbott* v. *Abbott*, 560 U.S. 1, 20 (2010).

### F.     Appellee Has No *Ne Exeat* Right Under Turkish Law

Custody rights under the Hague Convention are determined "under the law of the State in which the child was habitually resident immediately before the removal." Hague Conv. Art. 3. The July Order conclusively resolves any question as to whether the Divorce Protocol created a binding *ne exeat* right allowing Appellee to block Appellant from going abroad with the Child.  (App. 720).  There is no authority more definitive on Turkish law than the rulings of a Turkish Court.

Unsurprisingly, given the Turkish Court's conclusion in the July Order,nNot a single witness at trial (including Mr. Yalcin, "an expert recognized for his knowledge of the intersection between the Hague Convention and Turkish Custody law" (Opp. 9)) testified that there is a *ne exeat* right under Turkish law separate from joint custody.  The phrase "ne exeat" does not appear anywhere in the trial transcript.  If Appellee's "*ne exeat* right is written into the Divorce Decree," why did none of Appellee's experts testify that Appellee had a *ne exeat* right under Turkish law at trial? (Opp. 30).  They did not, because, where, as here, Appellant has sole custody, a *ne exeat* right simply does not exist—as confirmed by the July 2024 Order.

Appellee misleadingly cites to *Leonard v. Lentz*, 288 F. Supp. 3d 945 (N.D. Iowa 2018) and states that it is "incorrect that Turkey does not recognize a *ne exeat* right." (Opp. 41).  As Appellee likely is aware (considering Mr. Yalcin was the

- 21 -

expert in *Leonard*, as Appellee notes), the parties in *Leonard* were "presently engaged in divorce proceedings in Turkey" at the time of the decision and "remain[ed] legally married." *Leonard*, 288 F. Supp. 3d at 949. This fact makes the Appellee's reliance on *Leonard* inapposite. It is well-established that, when parties are married, they share joint custody under Turkish Law. Appellee's own experts, including Mr. Yalcin, acknowledged this at trial. (App. 219, 263, 619).

Because the parents in *Leonard* still had joint custody, under the Turkish Civil Code, they both had decision-making rights to prevent a child's removal. *Leonard*, 288 F. Supp.3d at 956. In addition, in *Leonard*, the Court acknowledged that the "Turkish Family Court issued a *ne exeat* order providing that the children were not to be taken out of Turkey without petitioner's consent" prior to the respondent's removal of the children (though the Court noted the Turkish Family Court did not need to issue that order because petitioner already had that right). *Id*. at 949, 956. *Leonard* therefore does not support the District Court's order that a *ne exeat* right exists under Turkish law where, as here, the parties are divorced, their Divorce Decree awards Appellant sole custody, and the Turkish Court already refused to enter a *ne exeat* order.

Appellee assertion that the Hague Convention itself provides him with custodial rights because of Article 5's broad definition of custodial rights (Opp. 12, 17, 23, 34, 35, 37) "rests on a fundamental misunderstanding of the Hague

- 22 -

Convention." (Opp. 33). The Hague Convention cannot create independent custodial rights that do not exist under the laws of the state of habitual residence. As the Court in *Leonard* stated, "the law of the children's country of habitual residence must govern" and "[t]hus, the Court is not permitted to ignore Turkish law." *Leonard*, 288 F. Supp.3d at 951. Likewise, the Supreme Court's decision in *Abbott* makes clear that the existence of *ne exeat* custodial rights under the Hague Convention depends on whether such rights exist under the laws of the country of habitual residence. *Abbott*, 560 U.S. at 6 (father had *ne exeat* right under Chilean law). Therefore, because a Turkish Court—the definitive authority on Turkish law— held that Appellee does not have a *ne exeat* right, the District Court's conclusion (and Appellee's position) that Appellee has a *ne exeat* right under the Hague convention is indefensible.

The cases relied on by Appellee where courts found a *ne exeat* custodial right are wholly inapposite because in those cases, the law of the state of habitual residence provided the petitioner with a custodial right. (Opp. 34-37). *See, e.g., Palencia v. Perez*, 921 F.3d 1333 (11th Cir. 2019) (father had patria potestad rights under Guatemalan law which "endowed [him] with joint decision-making authority"); *Furnes v. Reeves*, 362 F.3d 702, 706-07 (11th Cir. 2004) (settlement agreement provided parents had "joint parental responsibility" and Norwegian law

provided that "[i]f the parents have joint parental responsibility, both of them must consent to the child moving abroad.").[7]

There is simply no support for the proposition that Turkish Law recognizes a *ne exeat* right when one parent has sole custody or that there is any custodial arrangement recognized in between sole custody and joint custody. The District Court's Order thus runs afoul of Turkish law because it creates a third type of custodial right which Appellee has provided no evidence actually exists under Turkish law. This finding is reversible error, especially in light of the July Order, which expressly rejected Appellant's attempt to create a *ne exeat* right for himself by petitioning the Turkish Court to stop Appellant from going abroad with the Child. (App. 720, 738).

---

[7] *See also Hanley v. Roy*, 485 F.3d 641, 646-47 (11th Cir. 2007) (the parties were expressly appointed as "joint testamentary guardians," and under Irish law, "guardianship" encompasses "the duty to maintain and properly care for a child and the right to make decisions about a child's religion and secular education, health requirements and general welfare."); *Altamiranda Vale v. Avila*, 538 F.3d 581, 586 (7th Cir. 2008) (divorce decree noted that respondent's physical custody of the children was subject to the petitioner's "right of *patria potestas*"—a right which is "so extensive" that courts have consistently found constitutes custody rights under the Hague Convention); *Garcia v. Posada*, 728 F. Supp 3d 430, 440, 442 (N.D. Tex. 2024), *appeal dismissed*, No. 24-10319, 2024 WL 4527116 (5th Cir. June 5, 2024) (divorce decree granted "parental authority" to both parents and stated that the parties would jointly notify the family court of a change in domicile, indicating that Petitioner had a "joint say in altering the child's habitual residence.").

## II. IN THE ALTERNATIVE, THIS COURT SHOULD REMAND TO DISTRICT COURT WITH AN ORDER DIRECTING THE APPLICATION OF ARTICLE 15

Appellee wrongly asserts that the District Court correctly declined to apply Article 15 of the Hague Convention, which would have enabled the District Court to obtain a ruling from the Turkish Court regarding whether Appellee has custodial rights under Turkish law – the central question in this case.

Appellee does not dispute that the basis of the District Court's conclusion that Turkish Courts do not accept Article 15 requests is Mr. Yalcin's testimony (SPA 37) or that this testimony is directly contradicted by Turkey's country profile on the Hague Conference on Private International Law website, which states that Turkey does accept Article 15 requests. (Opp. 45-46; Br. 45-46). Appellee also does not contest that the Turkish Ministry previously provided an opinion on a party's custodial rights relied on by this Court in *Ozaltin*, (Opp. 45; Br. 46), further calling into question the District Court's acceptance of Mr. Yalcin's testimony. Both the Turkey Country profile and *Ozaltin* undermine Mr. Yalcin's credibility as an expert witness and demonstrate that the District Court could certainly have employed Article 15 to request a determination from the Turkish Court regarding Appellee's custodial rights.

Besides Appellee's incorrect claim that Turkey does not accept Article 15 requests, Appellee's only other defense of the District Court's improper refusal to

- 25 -

seek an Article 15 opinion from Turkey is that it "would cause further delay." (Opp. 45). Appellee's evidence that further delay would ensue is the 2024 Annual Report on International Child Abduction, which notes that there is delay in the judicial process in custody cases in Turkey. (*Id*. at 45-46). However, that Annual Report also indicates that "The U.S. and Turkish Central Authorities have a strong and productive relationship that facilitates the resolution of abduction cases under the Convention."[8]

More importantly, regardless of whether there are delays in the resolution of other custody cases in Turkey, the evidence in the record establishes that the Turkish Court has repeatedly acted expeditiously in the proceedings that involve the parties in this case. For example, on January 30, 2024, Appellee moved for injunctive relief as part of his Custody Case. (App. 743). In less than a month, on February 22, 2024, the Turkish Court ruled, denying Appellee's request, including his request to prevent Appellant from traveling abroad with the Child. (App. 733). Then, on July 10, 2024, Appellee sought to prevent Appellant from relocating abroad with the Child. (App. 737). Only *two days* later, the Turkish Court denied Appellee's application in the July Order. (App. 720-21). Following Appellant's move to the United States with the Child, Appellee made two additional applications to the Turkish Court, on

---

[8] https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/for-providers/legal-reports-and-data.html.

October 17, 2024, and October 31, 2024, seeking to have interim custody of the Child transferred to him and to expedite the custody case. (App. 790-91, 795). The Turkish Court acted expediently again, denying the relief requested by Appellee on November 4, 2024, five days after Appellant's latest application. (App. 803). Most recently, at a February 7, 2025, hearing in the Custody Case, Appellee sought to restrict Appellant from leaving Turkey with the Child. The Court ruled on that request the same day. (Opp. 26).[9]

In light of the evidence of the Turkish Court's expediency in ruling on multiple requests made by Appellee, Appellee's position that the Turkish Court will not act quickly strains credulity. Indeed, Appellee himself acknowledged that "[i]n the instant case the Turkish court is actively issuing orders." (Opp. 44). Therefore, remanding this case and requiring the District Court to direct Appellee to request an Article 15 ruling from the Turkish Court would not "defeat the objectives of the Convention." (Opp. 47).

Instead, the objectives of the Hague Convention—"to ensure that rights of custody and of access under the law of one Contracting State are effectively

_____

[9] As set forth in Appellant's opposition to Appellant's Motion to Supplement the Record, this Court should not consider the February 2025 Turkish Court order as it is outside the record on appeal. Nevertheless, if the Court sees fit to consider that decision, it should also note the speed with which the Turkish Court acted, issuing its ruling only days after the District Court Order.

- 27 -

respected," Hague Convention Art. 1—would be achieved by the application of Article 15 in this case. It is especially appropriate to employ Article 15 here given the Turkish language translation disputes, the pending Custody Case in Turkey, the Turkish Court's demonstrated history of acting expeditiously, and the difficult questions of Turkish law at issue. Indeed, the District Court previously acknowledged that Article 15 can be appropriate "after an evidentiary hearing, especially when there are difficult questions of foreign law"—as there are in this matter. (SPA 15).

Under these circumstances, if this Court does not reverse the District Court's Order, it should remand to the District Court so Appellee can obtain an Article 15 ruling from the Turkish Court. *See In re Application of Adan*, 437 F.3d 381, 394 (3d Cir. 2006) (remanding case and strongly suggesting that district court request an Article 15 determination, noting that "a determination of [the petitioner's] custody rights at the time of removal by an Argentine court . . . would be very helpful in properly determining the wrongfulness of [the child's] removal.").

## CONCLUSION

As set forth in Appellant's principal brief, the District Court's Order and Judgment should be reversed or, in the alternative, the case should be remanded to

the District Court with an order that the District Court direct Appellee to request an

Article 15 ruling from the Turkish Court regarding Appellee's custodial rights.

Dated:      New York, New York
              March 10, 2025

**BLANK ROME LLP**

By: _/s/ Brett S. Ward_
Brett S. Ward
Andrew T. Hambelton
Paul H. Tzur (admission pending)
1271 Avenue of the Americas
New York, New York 10020
Tel.: (212) 885-5000

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(b) because it contains 6,966 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

2.      This brief complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a 14-point proportionally-spaced serif font.

Dated:      New York, New York
            March 10, 2025

**BLANK ROME LLP**

By: *_/s/ Brett S. Ward_*
Brett S. Ward
Andrew T. Hambelton
Paul H. Tzur (admission pending)
1271 Avenue of the Americas
New York, New York 10020
Tel.: (212) 885-5000