**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

| | | |
|---|---|---|
| In the Matter of O.T. | ) | |
| | ) | |
| ZUHTU ONUR TATARI | ) | Docket No. 25-253 |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEVA DURUST | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

_____)

**OPPOSITION TO RESPONDENT-APPELLANT'S EMERGENCY
MOTION FOR TEMPORARY STAY OF ISSUANCE OF MANDATE OR,
<u>IN THE ALTERNATIVE, STAY OF ENFORCEMENT OF JUDGMENT</u>**

Richard Min
Michael Banuchis
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: 212-681-6400
Facsimile: 212-681-6999
Email: rmin@gkmrlaw.com
mbanuchis@gkmrlaw.com
_Attorneys for Appellee_

-1-

## **<u>TABLE OF CONTENTS</u>**

**I.PRELIMINARY STATEMENT**…………………………………….…....4

**II. ARGUMENT**……………………………………………………...…6

    A. The Court Should Not Temporarily Delay Issuance of the Mandate Until June 15, 2025, as Stays Conflict with the Central Mandate of the Convention……………………………………………….....................6

    B. Granting the Stay Will Cause Substantial Harm to Appellee and the Child……………………………….…………………………….............8

    C.Public Interest Weighs Against a Stay……………………………........12

**III. CONCLUSION**……………………………………...…..…....…..15

# TABLE OF AUTHORITIES

### CASES

*Chafin v. Chafin*, 568 U.S. 165 (2013) --------------------------------------- *passim*

*Friedrich v. Friedrich,* 78 F.3d 1060 (6th Cir. 1996)---------------------------------6, 7

*Hofmann v. Sender*, 2012 WL 8466673 (S.D.N.Y. Dec. 20, 2012)------------------14

*Latta v. Otter,* 771 F.3d 496 (9th Cir. 2014)-------------------------------------------6

*Lukic v. Elezovic*, 20-CV-3110, 2021 WL 804384 (E.D.N.Y. Mar. 3, 2021) ------ 13

*March v. Levine,* 249 F.3d 462 (6th Cir. 2001)-------------------------------------------7

*Monasky v. Taglieri*, 140 S. Ct. 719 (2020)----------------------------------------5, 14

*Nicolson v. Pappalardo*, 685 F.Supp.2d 142 (D. Maine 2010)----------------- 10, 12

*Redmond v. Redmond*, 724 F.3d 729 (7th Cir. 2013) ---------------------------------- 7

*Taglieri v. Monasky*, 907 F.3d 404 (6th Cir. 2018), aff'd, 140 S. Ct. 719 (2020) -----

------------------------------------------------------------------------------------------14, 19

*Vale v. Avila,* No. 06-1246, 2008 WL 2246929 (C.D. Ill. May 29, 2008)---------14

*Velozny on behalf of R.V. v. Velozny*, 2021 WL 5567265 (2d Cir. 2021)----------- 7

*Whiting v. Krassner*, 391 F.3d 540 (3d Cir. 2004) ------------------------------------ 8

### OTHER AUTHORITIES

Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25,

1980, T.I.A.S. No. 11,670--------------------------------------------------------- *passim*

Petitioner-Appellee Zuhtu Onur Tatari ("Appellee") submits this brief in opposition to Respondent-Appellant Neva Durust's ("Appellant") motion for a temporary stay of issuance of mandate (cited as "Stay Motion" herein) (Dkt. 66.2).

## I. PRELIMINARY STATEMENT

This Court has already found that Appellant wrongfully abducted O.T. from his home in Turkey. Her emergency motion to delay the mandate is not a good-faith request to protect the child's interests – it is the latest in a series of calculated maneuvers to obstruct enforcement of the district court's judgment and postpone the child's lawful return to his habitual residence. This Court has spoken. Appellant's bid for a stay is meritless, inconsistent with the Hague Convention's central aim of prompt return, and deeply prejudicial to the father, who has now been separated from his son for over 227 days. Every additional day of delay perpetuates the harm this Court and the district court sought to end. Appellant's motion should be denied.

By Summary Order dated March 28, 2025, this Court affirmed the district court's judgment directing the return of O.T. to his habitual residence of Turkey ("Summary Order"). The unanimous panel agreed "with the district court that Tatari's custodial rights were breached, making the removal wrongful." (Dkt. 64.1 at 6).

Just three days later, on March 31, 2025, Appellant filed a Stay Motion seeking to postpone issuance of the mandate until June 15, 2025, purportedly in the

interest of justice. (Dkt. 66.2 at 2). In doing so, Appellant claims that a temporary stay will not prejudice Appellee, but that denying the stay would cause the Child significant harm. This assertion is unfounded. Any nominal disruption to the Child's recreational or school activities in New York is far outweighed by the profound and ongoing harm suffered by Appellee from continued separation from his son. Every additional day that the district court's order is not enforced perpetuates that harm – depriving Appellee of meaningful time with his child and the opportunity to begin healing a relationship fractured by Appellant's wrongful abduction.

It has now been 65 days since the district court issued its ruling on January 29, 2025. Granting the requested stay would only exacerbate the injury to both father and son, denying them the chance to reconnect in Turkey, the only country O.T. has ever called home.

The Supreme Court has made clear that Contracting States must "'use the most expeditious procedures available' to return the child to her habitual residence." *Monasky v. Taglieri*, 140 S. Ct. 719, 724 (2020). "The Hague Convention **mandates** the prompt return of children to their countries of habitual residence." *Chafin v. Chafin*, 133 S. Ct. 1017, 1028 (2013) (emphasis added). This Court should adhere to that mandate and deny the stay.

-5-

## II.  ARGUMENT

A. <u>The Court Should Not Temporarily Delay Issuance of the Mandate Until June 15, 2025, as Stays Conflict with the Central Mandate of the Convention</u>

The burden lies squarely with the party seeking a stay to demonstrate its necessity under the specific facts of the case. *See Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014) ("The party seeking a stay – or continuation of a stay – bears the burden of showing his entitlement to a stay."). That burden is especially heavy in Hague Convention cases, where delay is not just disfavored, it is antithetical to the treaty's core purpose. As courts have repeatedly emphasized, "[s]taying the return of a child . . . should hardly be a matter of course." *Friedrich v. Friedrich*, 78 F.3d 1060, 1063 (6th Cir. 1996). Indeed, "[i]f losing parents were effectively guaranteed a stay, it seems likely that more would appeal, a scenario that would undermine the goal of prompt return and the best interests of children who should in fact be returned." *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013). Any unnecessary delay in effectuating a court's return order "renders the subsequent return more difficult for the child, and subsequent adjudication more difficult for the foreign court." *Friedrich*, 78 F.3d at 1063 n. 1.

Delaying enforcement of a return order not only harms the left-behind parent – it makes eventual return more traumatic and destabilizing for the child and further complicates custody proceedings in the child's home country.

Appellant cannot escape these settled principles. The Supreme Court's decision in *Chafin* makes clear that routine or reflexive stays in Hague cases are flatly inconsistent with the Convention's objective of securing the swift return of wrongfully retained children. *Chafin*, 133 S. Ct. at 1027.

To that point, the Convention could not be more explicit: cases involving the wrongful removal or retention of children must proceed with urgency. The treaty's preamble underscores the need for "prompt" return. Article 2 obligates signatory states to "use the most expeditious procedures available," while Article 11 contemplates final adjudication within six weeks of filing. Delay is not a discretionary luxury but a violation of the Convention's structure and spirit.

Federal courts have repeatedly reinforced that mandate by denying or vacating stays that would prolong a child's wrongful retention. *See*, e.g., *Friedrich*, 78 F.3d at 1070 ("the district court's stay of that order pending appeal is VACATED. . . [b]ecause T.'s return to Germany is already long-overdue"); *March v. Levine*, 249 F.3d 462, 475 (6th Cir. 2001) (stay vacated because the children "have been separated from their father for almost one year now"); *see also Velozny on behalf of R.V. v. Velozny*, 2021 WL 5567265, at *1 (2d Cir. 2021); *Smedley v. Smedley*, 772 F.3d 184, 188 (4th Cir. 2014); *Redmond v. Redmond*, 724 F.3d 729, 735 (7th Cir. 2013); *Whiting v. Krassner*, 391 F.3d 540, 543 (3d Cir. 2004); *Taglieri v. Monasky*,

907 F.3d 404, 407 (6th Cir. 2018), *aff'd*, 140 S. Ct. 719 (2020); *Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014).

The central issue in Hague Convention cases is the prompt return of children to their country of habitual residence. It is important to emphasize that the Hague Convention requires swift action to prevent children's prolonged absence from their habitual residence, unless an appeal is pending, in which case a stay may be justified. Here, a stay is clearly not justified. There is no legal basis for staying an order for return, absent any pending appeal. The appellant is attempting to misinterpret the nature of this proceeding by framing it as a custody case based on the child's best interests. However, this is not a custody case, and any protection of the child's interest is concluded once the case is decided.

Appellant's motion is nothing more than an eleventh-hour attempt to delay the treaty's most essential directive. This Court should deny her request for a temporary stay of the mandate.

B. <u>Granting the Stay will Cause Substantial Harm to Appellee and the Child</u>

Appellant contends that Appellee will not suffer substantial harm from a stay of the mandate because he can visit his son in the United States. This argument is both legally and factually bankrupt. Appellee has already endured profound harm. In August 2024, Appellant abducted the Child, severing the father-son bond during critical developmental years. Appellee missed the irreplaceable: school days,

birthdays, everyday moments, and emotional milestones – the very experiences that define a parent-child relationship. O.T. has always had a stable and nurturing home in Istanbul, and this will remain the case upon his return. The academic semester at Koç School has just started and the school stands ready to enroll the Child. Appellee has also secured appropriate psychological resources to facilitate a smooth and supported transition. *See* Appellee's Declaration annexed hereto as **Exhibit A**.

The Hague Convention imposes a clear and enforceable obligation on courts to act promptly in cases concerning the return of children. Pursuant to Article 11 of the Convention, "[t]he judicial or administrative authorities of Contracting States shall act **expeditiously** in proceedings for the return of children." (emphasis added). Further, "If the judicial or administrative authority concerned has not reached a decision **within six weeks** from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay." Convention, art. 11 (emphasis added). In the present case, Appellee timely filed his Petition and prevailed not only in the district court but also in this Court, in full alignment with the Convention's mandate. He has remained engaged throughout the proceedings, making every reasonable effort to restore his relationship with his son. In stark contrast, Appellant now seeks

an additional ten-week delay, characterizing it as a routine request. This position is in direct conflict with Article 11 of the Convention. Such a request, standing alone, exceeds the six-week resolution period prescribed by the Convention and is inherently at odds with its fundamental objectives.

Courts have squarely rejected arguments like Appellant's. In *Nicolson v. Pappalardo*, 685 F. Supp. 2d 142, 145-46 (D. Maine 2010), the court emphasized that the mother "fail[ed] to recognize that if the court grants a stay, [the father] will continue to suffer from the very harm that led to this lawsuit—the absence of [the child] from [the father's] life." The court held that the father had already been deprived of nearly a year with his daughter and concluded that "[e]very additional day that [the child] is wrongfully retained in the United States causes harm to the [father]." *Id*.

Appellant also asserts that it would be traumatic for the Child to be "unceremoniously yanked out of the New York school," arguing that such an abrupt mid-year move would be detrimental to his development (Dkt. 66.2 at 2). Yet she offers no explanation as to why the Child's equally abrupt removal from Turkey, the only country he had ever called home, was not similarly traumatic. The only way to minimize any potential harm to O.T. is to return him home immediately so that he can begin reintegrating.

Appellant further implies that social events and extracurricular activities in New York somehow outweigh the necessity of reunification with the Child's father in his habitual residence. She cites a birthday party, school sports playoffs, a class event, and a weekend in Southampton (Dkt. 66.2 at 4). But the Child missed countless equivalent events in Turkey when he was abducted. These superficial distractions cannot justify the continued unlawful retention of the Child or the ongoing deprivation of his relationship with his father.

The argument that O.T. should remain in New York until June 15, 2025, to avoid disruption is a thinly veiled attempt to retroactively legitimize Appellant's misconduct. It cannot justify 227 days of unlawful separation. Appellant notes that "Appellee has the resources and will be allowed to visit O.T. in the United States during the temporary stay" and that "Appellee can also communicate with O.T. through electronic means." (Dkt. 66.2 at 9). This is misleading at best. Appellee's communication with his son over this proceeding has been sporadic, monitored, and entirely subject to Appellant's control. Every attempt to arrange visitation in the United States has been met with obstruction and gamesmanship from Appellant.

Appellant also misrepresents the status of proceedings in Turkish court, claiming that a final custody determination is expected in April 2025. That is inaccurate, as confirmed by Appellee's Turkish counsel. *See* Altin Mimir's

-11-

declaration annexed hereto as **Exhibit B**. This is yet another delay tactic, aimed not at justice, but at running out the clock on a lawful return order.

Congress was unequivocal in enacting the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §9001 et seq., finding that "international abduction or wrongful retention of [a] child is harmful to their well-being." The imperative is clear: return must be swift. Delay breeds confusion, erodes the Child's connection to his home country, and deepens the damage to his relationship with Appellee. Each additional day of wrongful retention inflicts real, compounding harm. This Court should not allow it to continue.

C. Public Interest Weighs Against a Stay.

The public interest weighs heavily against any further delay in the return of O.T. Denying a stay is not only consistent with the equities of this case, it is mandated by the core principles of the Hague Convention. Federal courts have consistently recognized that the public has a compelling interest in the prompt return of wrongfully removed children to their countries of habitual residence.

In *Nicolson v. Pappalardo*, the court confronted this precise issue and concluded unequivocally: "[T]he public interest supports denial of the stay. The very purpose of the Hague Convention is 'to secure the prompt return of children wrongfully removed to or retained in' a foreign jurisdiction." *See* Hague Convention, T.B.A.S.S. No. 11,670, 1343 U.N.T.S. 89 (1980); *Nicolson*, 685 F.

Supp. 2d at 146. Granting a stay here would directly undermine the Convention's purpose and violate the public interest.

Appellant's conduct underscores exactly why the Convention was enacted. She abducted the Child from Turkey, entered the United States under the radar, and obstructed Appellee's relationship with O.T. Her current claim that returning the Child would cause "irreparable harm" is both cynical and legally untenable. As one district court made clear in *Lukic v. Elezovic*, "[a] removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted. Under the logic of the Convention, it is the abduction that causes the pangs of subsequent return." 20-CV-3110, 2021 WL 804384, at *3 (E.D.N.Y. Mar. 3, 2021).

The Convention imposes a clear and binding obligation on Contracting States to resolve these cases swiftly. Article 2 requires states to "use the most expeditious procedures available," while Article 11 sets an expectation that courts resolve Hague cases within six weeks. Delay is not only contrary to the Convention's text, it actively harms children by leaving them in legal limbo. The Supreme Court in *Chafin* reiterated this imperative: "Importantly, whether at the district or appellate court level, courts can and should take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation. Many courts already do so." *Chafin*, 133 S. Ct. at 1026-28. Likewise, in

*Monasky v. Taglieri*, 140 S. Ct. 719, 731 (2020) the Supreme Court noted that "a deferential standard of review speeds up appeals and thus serves the Convention's premium on expedition."

Federal courts have repeatedly confirmed that the public interest in Hague Convention cases is defined by the treaty's core mandate: "to secure the prompt return of children wrongfully removed to or retained in any Contracting State." *Hofmann v. Sender*, 2012 WL 8466673, at *1 (S.D.N.Y. Dec. 20, 2012) (quoting Hague Convention art. 1); *see also Vale v. Avila,* No. 06-1246, 2008 WL 2246929 at *3 (C.D. Ill. May 29, 2008) ("[T]he public interest of this country and of other countries which are signator[ie]s to the Convention is met when the purpose of the Convention is met."). As Justice Ginsburg aptly observed, "Protraction ... is hardly consonant with the Convention's objectives." *Chafin*, 568 U.S. at 185 (Ginsburg, J., concurring).

A stay at this stage would serve only to prolong an unlawful retention, undermine the rule of law, and send a dangerous signal to abducting parents that they can utilize tactics to delay a return order indefinitely. Appellant has already taken far too much: over 200 days of wrongful retention and obstructed contact between a father and his son, irretrievable time lost, and ongoing emotional damage caused by a brazen act of abduction. Appellant's strategy is apparent: to keep O.T. in the United States long enough to ultimately sever his relationship with his father.

-14-

The request for a stay is not grounded in law or equity but is a tactical ploy to postpone compliance with a lawful order and to continue benefiting from her own misconduct. Such manipulation of the Convention is inconsistent with its intended purpose and is not contemplated by its provisions.

The Hague Convention does not countenance delay. It demands urgency, accountability, and action. The judgment has been affirmed. The law is clear. The time for O.T.'s return is now. This Court should deny Appellant's motion in its entirety and issue the mandate without further delay.

III.  **CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court deny Appellant's motion for a temporary stay of issuance of mandate.

Dated: April 4, 2025
New York, New York

Respectfully submitted,

/s/ Richard Min
Richard Min
Michael Banuchis
GREEN KAMINER
MIN & ROCKMORE, LLP
420 Lexington Avenue, Suite 2834
New York, NY 10170
(212) 681-6400

*Counsel for Petitioner-Appellee*

-15-

## CERTIFICATE OF SERVICE

I hereby certify that, on April 4, 2025, a copy of the foregoing paper was filed electronically through the appellate CM/ECF system with the Clerk of the Court.  I further certify that all parties required to be served have been served.

Dated:        April 4, 2025


/s/ Richard Min_____
Richard Min
*Counsel for Petitioner-Appellee*



## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORDCOUNT LIMITATIONS

I hereby certify, pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A), 32(a)(5), and 32(a)(6) that the attached Opposition is proportionately spaced, has a typeface of 14 points or more, and contains 2721 words.


Dated:        April 4, 2025
             New York, New York


 _s/ Richard Min_____
Richard Min
*Counsel for Petitioner-Appellee*


-16-

EXHIBIT A

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
--------------------------------------------------X

ZUHTU ONUR TATARI,

     *Petitioner-Appellee*                        Case No. 25-253

v.

NEVA DURUST,

     *Respondent-Appellant.*

--------------------------------------------------X

## <u>DECLARATION OF ZUHTU ONUR TATARI IN SUPPORT</u>

Zühtü Onur Tatari declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Petitioner-Appellee in the above-captioned matter and the father of O.T., my six-year-old son.

2. I submit this declaration in support of my opposition to Respondent-Appellant Neva Dürüst's motion to stay the issuance of the mandate or, in the alternative, to stay enforcement of the judgment until June 15, 2025.

3. As of the date of this declaration, it has been 227 days since my son was wrongfully removed from Türkiye and taken to the United States without my knowledge or consent.

4. Since August 20, 2024, I have been separated from O.T. under unlawful conditions, despite court rulings confirming my rights and the wrongful nature of his removal.

5.   During these 227 days, my communication with him has been inconsistent, limited, and controlled entirely by the Respondent. My visitation with O.T. has been controlled through her lawyers.

6.   I have missed meaningful milestones in his life — school days, birthdays, simple conversations, and day-to-day bonding that every father deserves to experience with his child.

7.   I am deeply committed to O.T.'s well-being. O.T. has always had a stable and nurturing home in Istanbul, Türkiye, and this will remain the case upon his return. Koç School, his school in Turkey, is ready to receive him, and we have arranged for psychological and emotional support to ensure a smooth reintegration and transition.

8.   Further delay will only increase his confusion, weaken his ties to his country, and further damage our bond. Every additional day of wrongful retention deepens the harm already caused by this abduction.

9.   I am ready to support a structured, compassionate, and child-centered return process.

10. I welcome Ms. Dürüst to participate in O.T.'s life in Türkiye. I believe O.T. will benefit from having both parents present in a lawful and cooperative setting. That opportunity has been taken away from him by the wrongful relocation, and I respectfully urge this Court to enforce the return without further delay.


DocuSigned by:

7474A9ABEFEB4FD...

11.With this opposition, I am seeking justice, accountability, and the restoration of my rightful role in my son's life — a role that has been denied for far too long.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 3, 2025

_____
Zühtü Onur Tatari

03-04-2025

EXHIBIT B

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------------------------X

ZUHTU ONUR TATARI,

    *Petitioner-Appellee*

                                                    Case No. 25-253

v.

NEVA DURUST,

    *Respondent-Appellant.*

-----------------------------------------------------X

## DECLARATION OF ALTİN MİMİR IN SUPPORT

    Altin Mimir declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

    1. I am an attorney duly licensed to practice law in Turkey and serve as legal counsel to the Petitioner-Appellee, Zühtü Onur Tatari, in the ongoing custody matter and related legal proceedings in Türkiye.

    2. I submit this declaration in further support of Mr. Tatari's motion to expedite issuance of this Court's mandate.

    3. On March 31, 2025, Respondent-Appellant filed a motion to stay the issuance of the mandate, or alternatively, to stay enforcement of the judgment until June 15, 2025. In her motion, Respondent asserts that a final custody determination is expected to be issued by the Turkish Family Court in April 2025. This representation is inaccurate and misleading.

4. As of March 1, 2025, a new judge has been assigned to the pending custody matter in Turkey. A hearing had originally been scheduled for March 20, 2025; however, due to significant delays and the overwhelming volume of cases in that courtroom, the judge previously assigned to the matter resigned. A new judge has been appointed to the case, but as of today, even the name of the newly assigned judge has not been made public.

5. The newly appointed judge will be required to undergo a full judicial reassignment process, which includes familiarizing themselves with the procedural history, legal filings, and substantial case materials not only in this matter, but across numerous other reassigned cases as well.

6. These procedural delays are known or should be known to the Respondent-Appellant's counsel.

7. Based on my professional experience and direct knowledge of the Turkish family court system and its current caseload, there is no realistic possibility that a final custody determination will be rendered by April 2025.

8. The judicial reassignment has already created delays, and the newly appointed judge will face scheduling conflicts, a new hearing calendar, and the time-consuming process of reviewing complex case files. These factors make an April resolution highly improbable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 1, 2025

Aksin Mimir